UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DARLENE LOW, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-0398-CVE-PJC |
| | ) | |
| STEVEN CHU | ) | |
| **The Honorable, Secretary of the Department** | ) | |
| **of Energy in his official capacity as an officer** | ) | |
| **of the United States,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court are Defendant's Motion to Dismiss Revised Complaint in Part for Lack of Jurisdiction and Brief in Support (Dkt. # 14) and "Plaintiff's Opening Motion for Leave of Court for Plaintiff to file a Supplemental Brief Pursuant to LCvR7.2(h) Addressing Material in Defendant's Reply, Document #18,filed [sic] December 22, 2009" (Dkt. # 19).[1]  Low's initial complaint was stricken for failure to comply with Fed. R. Civ. P. 8.  Dkt. # 12.  Low then filed an amended complaint[2] (Dkt. # 13) alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (ADEA).  Defendant asks the Court to dismiss certain claims pursuant to Fed. R. Civ. P.

---

[1] This is a motion to file a sur-reply.  Low filed a response to defendant's motion to dismiss (Dkt. # 15) and defendant filed a reply (Dkt. # 18).

[2] The document is titled "Pursuant to Court's Order directing Plaintiff to conform with [sic] violation of Fed. R. Civ. P. 8(a)(2): Revised Complaint Alleging: Four Violations of *Title VII of Civil Rights Act* – Retaliation (3) and Hostile Work Environment (1); and Violation of the *Age Discrimination in Employment Act (ADEA)*."  The Court refers to this document as the amended complaint.

12(b)(1) for lack of subject matter jurisdiction. Defendant argues that Low has failed to exhaust or timely exhaust her administrative remedies.

## I.

Low is a female federal employee.[3] Dkt. # 13, at 1-2. Her claims arise out of her employment with the Southwestern Power Administration (SWPA), an agency within the United States Department of Energy (DOE).[4] In August 2000, Low and defendant entered into a settlement agreement relating to Low's then-pending discrimination claims before this Court. Low alleges that the settlement agreement "specifically calls for [her] to become a GS-14 and also assume the agency's Environmental Program . . . ." Id. Low alleges that SWPA complied[5] with the settlement agreement until August 2007, when "SWPA unilaterally removed the Environmental Duties . . . ." Id. She alleges that SWPA refused to document this loss of duties "for almost a year," and that

---

[3]   Low alleges that she is "ADEA age protected," but does not state her age. Dkt. # 13, at 14.

[4]   This case is one of three pending cases arising out of Low's employment with SWPA. In Case No. 4:09-CV-0505-CVE-PJC, currently pending in this Court, Low filed a complaint alleging gender discrimination and seeking to bring individual and class actions. The complaint was stricken for failure to comply with Fed. R. Civ. P. 8. Low filed an amended complaint in that case. Defendant then filed a motion to dismiss (Case No. 09-CV-0505, Dkt. # 24). Low filed a response (Case No. 09-CV-0505, Dkt. # 25) and a motion to amend her amended complaint (Case No. 09-CV-0505, Dkt. # 26). Low has also filed suit in the United States Court of Federal Claims for breach of the 2000 settlement agreement, described infra.

[5]   Low's allegations regarding SWPA's compliance with the settlement agreement are inconsistent. At first, she states that "the Agreement specifically calls for [her] to become a GS-14 and also assume the agency's Environmental Program, which was so done until **2007**." Dkt. # 13, at 2 (emphasis in original). Later, she alleges that an "adverse employment action occurred when at least three of Defendant's high raking employees . . . deceived [her] by creating a position, but a lower level than required, which essentially was only the addition of more technical duties, fully unknown to Plaintiff . . . ." Id. at 7, 8. This statement implies that SWPA never complied with the settlement agreement because the position created was "a lower level than required."

SWPA gave "fabricated" reasons for this refusal. Id. at 4. Low alleges that she was replaced by a "significantly younger worker, not age protected" who "was treated more favorably . . . ." Id. at 13.

In April 2009 and "also earlier," Low allegedly contacted the Office of the Inspector General of DOE. Id. at 4-5. She alleges that the Civil Rights Unit "retaliated against her by choosing to intentionally ignore the DOE's documented testimony and over fifty (50) pages of single-spaced analysis, data presentation, and rebuttal material provided by [Low's] attorney" and "sought out 'lesser' authorities and/or misconstrued facts to [Low's] detriment and found not a single prima *facie case* established for any claim . . . ." Id. at 8 (emphasis in original). She alleges that the DOE Director of Civil Rights issued a final decision on her "Formal EEO Complaint" and "found no discrimination and concluded that [Low] failed to clear the hurdle of completing [sic] *prima facie* elements for any claim." Id. at 5. Low alleges that, as a result of her "asserting protected rights and repeated attempts over several months," SWPA employees have "openly exhibited hostility towards [her]," and engaged in actions that "unreasonably interfered with [her] work performance . . . and were objectively intimidating, hostile, offensive, and debilitating." Id. at 11-12.

Low alleges that "administrative remedies for civil rights claims have been exhausted," and states that "on May 30, 2009, [she] received Defendant's 'Final Agency Decision,' although filing authority has always existed on the ADEA claim." Id. at 1.

## II.

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), a court must determine whether it has subject matter jurisdiction over the parties' claims. Rule 12(b)(1) motions are either facial or factual attacks on the sufficiency of the complaint:

3

> Under a facial attack, the movant merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true. In a factual attack . . . however, the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends. In such a situation, the court must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence under Rule 12(b)(1).

Paper, Allied-Industrial, Chemical and Energy Workers Int'l Union v. Cont'l Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005) (citations omitted). A court need not convert a 12(b)(1) motion to one for summary judgment when considering matters outside the pleadings. Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). However, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." Id. The jurisdictional question is intertwined with the merits when subject matter jurisdiction is dependent on the same statute as the substantive claim. Id. That is not the case here. See Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324-25 (10th Cir. 2002) (rejecting plaintiff's argument that subject matter jurisdiction was intertwined with the merits of a Title VII case, where the jurisdictional issue was exhaustion of administrative remedies).

Exhaustion of administrative remedies is a "'jurisdictional prerequisite' to suit under Title VII," Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996), and under the ADEA, Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005) (deciding that "our holdings on the jurisdictional effect of Title VII filings determine the jurisdictional effect of ADEA filings" and, therefore, that "a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under the ADEA"). However, timely exhaustion of administrative remedies is not a jurisdictional prerequisite, because filing deadlines may be subject to equitable tolling in

appropriate circumstances. See infra. Thus, a court may determine whether administrative remedies were exhausted on a Rule 12(b)(1) motion, but must convert the motion to a Rule 56 motion when considering the timeliness of exhaustion.

### III.

Low lists five claims for relief in her amended complaint. The first is titled "*First* Retaliation Claim for Relief, Title VII, Retaliation, Immediate and Deceptive Non Implementation of Settlement Agreement Continuing Violation." Dkt. # 13, at 6. She alleges that

> an adverse employment action occurred when at least three of Defendant's high ranking employees, including the Agency Head, deceived [Low] by creating a position, but a lower level than required, which essentially was only the addition of more technical duties, fully unknown to [Low], thus depriving her of the opportunity to gain necessary experience to achieve a GS-15 position and be accepted into SES training.

Id. at 7.

Low's second claim is titled "*Second* Retaliation Claim for Relief, Title VII, Retaliation, Continued Deception and Denial by SWPA and their Refusal to Correct Continuing Violation." Id. at 8. Under this heading, Low alleges two specific actions: first, the same creation of a position as alleged in her first claim; and second, that

> DOE Civil Rights Unit retaliated against [Low] by choosing to intentionally ignore the DOE's documented testimony and over fifty (50) pages of single-spaced analysis, data presentation, and rebuttal material provided by [Low's] attorney. The DOE Civil Rights Unit also sought out 'lesser' authorities and/or misconstrued facts to Plaintiff's detriment and found not a single prima *facie case* established for any claim . . . .

Id. (emphasis in original). Low also makes general allegations of "adverse employment actions" and "adverse treatments." She alleges she "has had a series of adverse employment actions taken against her and then a refusal to document, then an incorrect documentation, and then additional

refusal to document which were a 'cover' for discrimination," and "multiple and continuing adverse treatments directed specifically to [Low] for lodging a complaint of federally-protected rights . . . ." Id. The Court will not speculate as to what these additional, unidentified adverse actions may be.

Low's third claim is titled "*Third* Retaliation Claim for Relief, Title VII, Retaliation, Removal of Specific Duties as Agreed to in 2000 Settlement Agreement Continuing Violation." Id. at 10. She alleges that "an adverse employment action occurred when Defendant unilaterally removed the environmental duties given to [Low] as part of her settlement agreement in 2000." Id.

Low's fourth claim is titled "*Fourth* Claim for Relief, Title VII, Hostile Work Environment, Continuing Violation." Id. at 11. Under this heading she alleges that, "[s]ince April, [sic] 2007, Defendant has openly exhibited hostility toward [Low] in testimony under oath by the actors themselves or others describing behavior, documents of record, and actions documented by records or lack of records." Id. She also alleges that "[d]efendant's behavior while retaliating against [her] created a hostile work environment," she was "often unable to physically remove herself away from her supervisor," "actions by Defendant unreasonably interfered with [Low's] work performance which [sic] continue today and were objectively intimidating, hostile, offensive, and debilitating," and that she "has been belittled." Id. at 11-12.

Low's fifth claim is titled "*Fifth* Claim for Relief, Age Discrimination in Employment Act (ADEA)." Id. at 12. She alleges that "in permanently losing her environmental duties, [she] was either 'discharged,' 'duties removed,' or received an 'adverse employment action.'" Id. She alleges that she was replaced by a younger employee who "was treated more favorably . . . ." Id. at 13.

6

Defendant asks the Court to dismiss Low's first, second, third, and fifth claims pursuant to Fed. R. Civ. P. 12(b)(1). Defendant argues that the Court lacks subject matter jurisdiction over these claims because Low has failed to exhaust her administrative remedies.

Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII and the ADEA. See supra. Federal employees who wish to bring sex or age discrimination claims "must consult [an Equal Employment Office (EEO)] Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). A claimant "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action." Id. After an attempt at informal resolution through the EEO counselor, a federal employee who wishes to bring a Title VII claim must follow the process set forth in 42 U.S.C. § 2000e-5. See 42 U.S.C. § 2000e-16(c) (stating that a federal employee may file a civil action as provided in § 2000e-5 if aggrieved by the disposition of her informal complaint). If the claimant wishes to bring an ADEA claim, she must follow the process set forth in 29 U.S.C. § 626. For both Title VII and ADEA claims, the process includes filing a formal Equal Employment Opportunity Commission (EEOC) complaint. See 42 U.S.C. § 2000e-5; 29 U.S.C. § 626(d)(1); see also Shikles, 426 F.3d at 1308-09 (stating that the ADEA administrative process "tracks that of Title VII" and that "[t]o the extent that the charge filing requirements of the ADEA and Title VII are similar, courts must construe them consistently").

The Tenth Circuit distinguishes between the failure to file an informal charge with an EEO counselor, which is a jurisdictional bar, and the failure to timely file an informal charge, which is not a jurisdictional bar. Sizova, 282 F.3d at 1325. "Compliance with the forty-five day time limit is not a matter of jurisdiction, but rather may be tolled in the appropriate circumstances." Id.

A.   Failure to file informal charge

Defendant argues that Low's claims arising out of the "creati[on of] a position, but a lower level than required, which essentially was only the addition of more technical duties, fully unknown to [Low], thus depriving her of the opportunity to gain necessary experience to achieve a GS-15 position and be accepted into SES training," Dkt. # 13, at 6, 8, are barred because they were not included in any complaint made to an EEO counselor. Dkt. # 14, at 6. The complete failure to bring a claim to an EEO counselor or in a formal EEO complaint deprives a district court of jurisdiction over that claim. See supra.

The EEO counselor's report mentions no events prior to the alleged removal of Low's environmental duties on August 29, 2007. See Dkt. # 14-2, at 6-9. The events mentioned in Low's formal EEOC complaint are: "continuing violation, age, to date since 8/29/07 in which Dallas Cooper removed a major portion of my job," "[c]ontinuing retaliation and/or hostile work environment since 8/29/07," and mention of "a second, independent complaint was made on 9/8/08 of discrimination and retaliation for not being able to apply for Dallas Cooper's vacated position - a formal complaint also made for this act." Dkt. # 15-2, at 36 (emphasis added). The record shows that Low did not bring a formal or informal charge regarding events in 2000.

Low cannot piggyback prior events on those she did include in her EEO or EEOC complaints by characterizing them as "continuing violations." In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court held that a Title VII plaintiff must bring an EEOC complaint regarding each discrete act of discrimination for which she seeks redress in a district court. See also Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) ("each discrete incident of [discriminatory or retaliatory] treatment constitutes its own 'unlawful employment practice' for

which administrative remedies must be exhausted"). The Tenth Circuit has "unambiguously recognized Morgan as rejecting application of the 'continuing violation' theory." Martinez, 347 F.3d at 1211. Morgan does not apply to hostile work environment claims, but Low does not claim that a hostile work environment existed in 2000.

Despite the fact that the Court previously informed Low that the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-1, 123 Stat. 5 (2009) (codified at 29 U.S.C. §§ 626, 633a, 794a, 42 U.S.C. §§ 2000a, 2000e-5, 2000e-16), does not apply to her claims, Case No. 09-CV-0505-CVE-PJC, Dkt. # 20, at 10, 15, Low insists that the Act somehow relieves her of the exhaustion requirement. Dkt. # 15, at 6. The Act relates to claims of discriminatory compensation practices only. See Pub. L. 111-2, 123 Stat. 5 (2009) (finding that Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007), 'significantly impairs statutory protections against discrimination in compensation' and amending 42 U.S.C. § 2000e-5 to clarify when a discriminatory compensation practice occurs). Low has made no claim for pay discrimination, notwithstanding her nonsensical allegation that "what has intentionally happened to Plaintiff was, in effect, an intentional indirect denial of future compensation as secret payback for suing the agency, or in the language of the *Ledbetter* law: a 'discriminatory compensation decision.'" Dkt. # 15, at 11. Low has never alleged that she was a victim of compensation discrimination.

Low also argues that she "amended" her EEO complaint to include allegations of wrongdoing in 2000, and that the events of 2000 were within the scope of the EEO investigation.[6] See Dkt. # 8-11. Low states that "a claim raised in Plaintiff's EEO Complaint was the removal of the duties promised to her in the 2000 settlement agreement (still in 2008 thought necessary for the GS-14). Stated differently, this was a material breach of the 2000 contract between Plaintiff and DOE." Dkt. # 15, at 8. This does not state a claim for anything that happened in 2000; the alleged wrongful action is the removal of her duties, which occurred in 2007 or 2008. Low attempts to save her 2000 claim by explaining that she learned "of the secret breach and continual deception of 'grade and opportunity shortage,'" during the investigation of her EEO complaint, and that "[p]laintiff's attorney immediately put together a very long letter responding to the above issue and other concerns. The specific issue of the position being below that bargained for was in the letter . . . ." Dkt. # 15, at 9. The EEO office acknowledged receipt of this letter and stated "we will accept the additional statement you reference. It will be considered in the final agency decision <u>to the extent that it contains rebuttal material</u>." Dkt. # 15-2, at 26 (emphasis added). Apparently, Low believes that, due to this letter, the EEO investigation was or should have been expanded to include events dating back to 2000. This is not the case.

---

[6]  Low also argues that "this is a perfect case [ ] for the need for equitable tolling as discussed in <u>Morgan</u> at 113, and this situation is recognized in the CFR." Dkt. # 15, at 10. Equitable tolling could alter the <u>time</u> in which Low must have brought charges relating to the creation of her position, but cannot excuse her failure to bring any charges whatsoever. Tolling is not relevant to charges that were never brought.

This letter[7] does not raise an additional allegation of discrimination or retaliation in 2000. The sole mention of allegedly wrongful events in 2000 in the portion of the letter that Low provided is a description of the responsibilities given to her after the settlement (the very responsibilities that she did not want removed in 2007 or 2008):

> when Mrs. Low's new, GS-14 Position Description was received, there was a huge surprise. The 'Environmental Program Manager' responsibility was added. No reason was given, and essentially no training was offered. In all probability, the additional responsibility was given to her to encourage her failure. This 'surprise' could have also been labeled 'retaliation.' Because of the stress of a lawsuit with her employer and all the attendant negative treatment afforded to her during the almost two years of litigation, Mrs. Low did not complain or return to [c]ourt.

Dkt. # 15-2, at 24. This is an explanation of why she did not bring a claim at the time, not a statement of present intent to bring one. The remainder of the portion of the letter that Low provided discusses events subsequent to 2000 as background information to her allegations regarding the removal of her environmental duties. E.g., id. at 24 ("[i]t now appears from the recent sworn testimony of SWPA officials that hostility (a/k/a retaliation) toward Mrs. Low still persists"); 25 ("her job displacement and loss of importance, embarrassment and prestige by the maverick Dallas Cooper 'served her right' for her previous transgressions against the agency").

The removal of duties in 2007 or 2008 is distinct from the creation of Low's position in 2000. Low has not exhausted her administrative remedies regarding any adverse employment action

---

[7] The Court refers to the three pages attached to Low's response and labeled "ROI 289," "ROI 290," and "ROI 291" as the "letter." Dkt. # 15-2, at 23-25. Low did not provide a complete copy of this letter.

that allegedly occurred in 2000.[8]  Therefore, the Court does not have jurisdiction over Low's claims arising out of the creation of her position in 2000.  Low's first claim is based solely upon this action, see Dkt. # 13, at 6-7 and, therefore, is dismissed pursuant to Fed. R. Civ. P. 12(b)(1).[9]  For the same reason, the portion of Low's second claim that is based upon this action, see id. at 8, is also dismissed.

B.     Failure to contact EEO counselor within forty-five days

Defendant argues that Low failed to contact an EEO counselor within forty-five days of certain actions alleged in her amended complaint.  However, any such failure would not deprive this Court of jurisdiction.  See supra.  Therefore, the Court cannot dismiss Low's claims pursuant to Fed. R. Civ. P. 12(b)(1) on that basis.

---

[8]     To the extent that Low asserts a claim for breach of the 2000 settlement agreement, the alleged breach occurred in 2007 or 2008.  See Dkt. # 13, at 7 (requesting that the Court "take appropriate action directed to DOE officials to return Plaintiff to conditions which existed in September 2000 and prior to April 2007 when Defendant initiated the series of unilateral events leading to breach").  Therefore, any potential breach of contract claim would not cover actions prior to the removal of Low's environmental duties.

[9]     Low seeks leave to file a sur-reply regarding defendant's motion to dismiss. Dkt. # 19.  Low proposes to provide additional material relating to: the Lilly Ledbetter Fair Pay Act of 2009, including portions of the Congressional Record and commentary "predicting an unsettled future for this new act"; "the Ledbetter Act effect on portions of two Supreme Court Cases"; "newly-found federal cases dealing with the validity of Plaintiff's claims dealing with: (1) the 2000 Settlement Agreement and (2) the removal of Plaintiff [sic] environmental duties"; and "some new argument, primarily based on *Morgan* and the *Ledbetter* case [sic] dealing with 'discrete' acts of discrimination – the holdings as they apply to Plaintiff's facts." Dkt. # 19, at 1-2.  None of this is relevant to the Court's determination that Low failed to exhaust administrative remedies for allegedly wrongful actions that occurred prior to 2007.  Further, none of this relates to any new matter raised in defendant's reply brief.

However, a court may grant summary judgment to the defendant based on the plaintiff's failure to timely exhaust administrative remedies. See, e.g., Sizova, 282 F.3d at 1326 (remanding with directions to allow limited discovery on the timeliness of plaintiff's contact with an EEO counselor); see also Beene v. Delaney, 70 Fed. App'x 486, 488 (10th Cir. 2003) (unpublished)[10] (determining that the district court erred in dismissing plaintiff's claims under Rule 12(b)(1) for failure to contact an EEO counselor within forty-five days, but affirming on the basis that defendant was entitled to summary judgment under Rule 56); cf. Dimsdale v. Peters, 217 Fed. App'x 743, 746 (10th Cir. 2007) (unpublished) (affirming summary judgment in favor of defendant where plaintiff failed to contact EEO counselor within forty-five days). Therefore, the Court must convert the remainder of defendant's motion to dismiss to a motion for partial summary judgment. When treating a Rule 12 motion as one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Both parties have provided extensive factual materials in this case. Low's response to defendant's motion to dismiss includes fifty-nine pages of attached factual materials.[11] See Dkt. # 15-2. Low also notes that "this jurisdictional challenge [defendant's motion to dismiss] has . . . a hint of a summary judgment motion clothed as a jurisdictional challenge . . . ." Low appears to have

---

[10] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

[11] The items attached to Low's response include excerpts from: unidentified documents, see Dkt. # 15-2, at 23-25 (three pages that appear to be from a letter written by Low's counsel to an EEO counselor); id. at 30-31 (two pages, which may or may not be from the same document, that appear to be portions of EEO complaints); and documents that appear to have Low's counsel's handwritten notes on them, see id. at 26 (letter from Department of Energy with "Therefore pages of the ROI: 289, 290, + 291 were considered by DOE" handwritten at the top); 31 (unidentified typewritten document with "'JW' is Jon Worthington, the Administrator of SWPA" and various arrows and numbers handwritten).

13

treated defendant's motion as one for summary judgment, as her response contains a seventeen-page factual narrative that includes extensive quotations from purported e-mails and descriptions of various meetings with SWPA personnel. See generally Dkt. # 15. Most importantly, Low argues for equitable tolling of the applicable time periods. Id. at 10, 11, 13. However, in an abundance of caution, the Court will allow the parties an opportunity to provide additional material that is pertinent to the motion before considering defendant's motion under Rule 56.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Revised Complaint in Part for Lack of Jurisdiction and Brief in Support (Dkt. # 14) is **granted in part** and **taken under advisement in part**: it is granted as to plaintiff's claims arising out of alleged actions taken prior to 2007, and taken under advisement as to plaintiff's third and fifth claims for relief and the remainder of plaintiff's second claim for relief.

**IT IS FURTHER ORDERED** that plaintiff's amended complaint (Dkt. # 13) is **dismissed in part**: plaintiff's "*First* Retaliation Claim for Relief, Title VII, Retaliation, Immediate and Deceptive Non Implementation of Settlement Agreement Continuing Violation" is **dismissed**, and paragraph 36 of plaintiff's "*Second* Retaliation Claim for Relief, Title VII, Retaliation, Continued Deception and Denial by SWPA and their Refusal to Correct Continuing Violation," Dkt. # 13, at 8, is **stricken**.

**IT IS FURTHER ORDERED** that the remainder of defendant's motion to dismiss (Dkt. # 14) shall be **converted** to a **motion for partial summary judgment** under Fed. R. Civ. P. 56. The parties shall adhere to the following schedule and requirements:

1. Defendant shall file an answer to the amended complaint no later than **January 18, 2010.**

2. Plaintiff shall provide the Court with a complete true and correct copy of each document attached to her response to defendant's motion to dismiss (Dkt. # 15) no later than **January 26, 2010.** Plaintiff shall redact from such copies all non-contemporaneous markings made by plaintiff or her counsel.

3. Should either party wish to provide additional factual material or argument, such party may file a brief and accompanying factual materials no later than **January 26, 2010.** Such additional briefs shall not contain argument or factual material duplicative of that already filed in this action. **Such additional briefs shall not exceed fifteen pages**.

**IT IS FURTHER ORDERED** that "Plaintiff's Opening Motion for Leave of Court for Plaintiff to file a Supplemental Brief Pursuant to LCvR7.2(h) Addressing Material in Defendant's Reply, Document #18,filed [sic] December 22, 2009" (Dkt. # 19) is **moot**. Plaintiff may provide the Court with new, relevant information in a brief opposing defendant's motion for partial summary judgment.

**DATED** this 8th day of January, 2010.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT