UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARLENE LOW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CV-0398-CVE-PJC |
| ) | |
| STEVEN CHU ) | |
| The Honorable, Secretary of the Department ) | |
| of Energy in his official capacity as an officer ) | |
| of the United States, ) | |
| ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is Defendant's Motion to Dismiss Revised Complaint in Part for Lack of Jurisdiction and Brief in Support (Dkt. # 14). Defendant argues that certain of Low's claims should be dismissed because she failed to exhaust or timely exhaust her administrative remedies. On January 8, 2010, the Court issued an Opinion and Order (Dkt. # 22) granting defendant's motion to dismiss in part and taking the remainder under advisement. The Court converted the remainder of the motion to a motion for summary judgment because issues regarding the timeliness of a plaintiff's exhaustion of administrative remedies cannot be resolved on a motion to dismiss but,

rather, must be decided pursuant to summary judgment standards. The Court permitted the parties to file additional briefs and factual materials, and each party did so.[1]

**I.**

Low is a female federal employee.[2] Dkt. # 13, at 1-2. Her claims arise out of her employment with the Southwestern Power Administration (SWPA), an agency within the United States Department of Energy (DOE).[3] In August 2000, Low and defendant entered into a settlement agreement relating to Low's then-pending discrimination claims before this Court. Low alleges that the settlement agreement "specifically calls for [her] to become a GS-14 and also assume the agency's Environmental Program . . . ." Id. Low alleges that SWPA complied with the settlement agreement until August 2007, when "SWPA unilaterally removed the Environmental Duties . . . ." Id.

---

[1] Low filed a supplemental brief (Dkt. # 28), which was irrelevant and barely comprehensible. Without leave of the Court, Low also filed a response to defendant's supplemental brief (Dkt. # 30). Low acknowledges that the response contains argument and material more relevant to the issues currently before the Court. Dkt. # 30, at 1 (explaining that Low "has obviously been confused by the scope of the 'partial summary judgment,' but having now received Defendant's Dkt. 29, the confusion has cleared"). The Court has considered both Low's initial supplemental brief and her additional response. However, in the future, Low's counsel's inability to understand the issues presented in this case will not provide her with an excuse to file unauthorized additional materials.

[2] Low alleges that she is "ADEA age protected," but does not state her age. Dkt. # 13, at 14.

[3] This case is one of two pending cases arising out of Low's employment with SWPA. In Case No. 4:09-CV-0505-CVE-PJC, currently pending in this Court, Low filed two complaints that were stricken for failure to comply with Fed. R. Civ. P. 8. Defendant filed a motion to dismiss (Case No. 09-CV-0505, Dkt. # 24). Low filed a response (Case No. 09-CV-0505, Dkt. # 25) and a motion to amend her amended complaint (Case No. 09-CV-0505, Dkt. # 26). The Court granted the motion to dismiss in part and permitted Low to file a third amended complaint. The remaining claim in that case is a gender discrimination claim relating to Low's inability to apply for her supervisor's position in 2008.

2

In May or June 2007, Low's supervisor, Dallas Cooper, suggested to Low that he remove some of her environmental responsibilities so that Low could focus more on safety issues. Dkt. # 24, at 26. Low and Cooper exchanged e-mails discussing a change in her duties throughout June 2007. E.g., Dkt. # 24-4, at 39-40. Cooper stated that he met with Low on August 22, 2007, and told her that he wanted to take over the environmental program for six months.[4] Dkt. # 24, at 51. On August 23, 2007, Cooper sent an e-mail to SWPA employees stating that he would be coordinating environmental program oversight. Id. at 47. On August 28, 2007, Low sent Cooper an e-mail stating "I request to know in writing my responsibilities after February 2008. I want the change in my responsibilities as of August 23, 2007 documented in a personnel action." Dkt. # 24-4, at 42. Cooper responded that he wanted the change to be informal, and stated that he was confused because he had intended the change to be temporary. Id. On August 29, 2007, Low sent Cooper an e-mail requesting documentation if her environmental duties were to be reassigned for six months. Id. Cooper responded, "[t]o make it a smoother transition I will formally change your [position description] and I will assume the environmental responsibilities myself. This will be a permanent change so there is no confusion." Id. at 43.

On July 15, 2008,[5] Cooper sent an e-mail to Low apologizing for not getting the formal paperwork completed. He asked her "once again if this works for you," since the formal position change had not been issued. Dkt. # 24-4, at 44. On August 4, 2008, Cooper sent Low another e-mail stating that he had not received a response to his July 15 e-mail. He further stated that he had

---

[4]  Low alleges that Cooper did not take over the environmental program, and that the responsibilities were given to Misty Yost, a younger female contractor. Dkt. # 13, at 2.

[5]  Cooper was on extended sick leave from January through April, 2008. Dkt. # 24-2, at 2.

decided not to change Low's position description and performance standards, and would have her resume her environmental duties on August 18, 2008. Id. at 46. On August 7, 2008, Low met with Jon Worthington, the SWPA Administrator. In that meeting, Worthington repeatedly asked Low if she wanted the environmental duties. Dkt. # 29-2, at 33-34. Low alleges that this was intimidating. Id. at 34. On August 12, 2008, Dallas Cooper signed a SF-52 "Request for Personnel Action" form that reflected a change in Low's position number. Dkt. # 24-3, at 44. At some point, a form SF-50 "Notification of Personnel Action" form was prepared. This form stated that the effective date of Low's reassignment was August 17, 2008, and that the action was at the employee's request. Id. On August 18, 2008, Low sent an e-mail to Worthington, Cooper, and others, stating that the date and remarks section of this SF-50 needed to be corrected. Id. Low met with Worthington again on August 25, 2008.[6] The same day, Worthington sent Low an e-mail to confirm that the SF-50 would read "action taken by mutual agreement." Dkt. # 24-4, at 2. On August 26, 2008 Low responded by e-mail and stated that she never agreed to a reduction of duties and that an SF-50 "only documents the unilateral action taken against me." Id. at 4. She further stated, "[a]s I am rapidly approaching the end of the '45 day notice period,' I need to move forward and initiate an EEO claim." Id.

Low first contacted an EEO counselor on August 26, 2008. Dkt. # 30, at 8. Low filed a formal discrimination charge with DOE on September 28, 2008. Dkt. # 15-2, at 35-36. DOE issued

---

[6] Low and Worthington agree that, at this meeting, Worthington said something to the effect of "you could be a clerk typist and still retain your grade." Low stated that she found this comment demeaning and did not think he would have said this to a male. Dkt. # 29-2, at 4. Worthington stated that he was trying to explain that, due to the 2000 settlement agreement, Low would keep her GS-14 grade regardless of her actual responsibilities. Dkt. # 24-2, at 27-28.

4

its Notice of Final Agency Decision on May 26, 2009. Dkt. # 24-4, at 13. The notice states that the following issues were accepted and investigated:

> Whether a continuing violation occurred based on retaliation, sex (female), and age (66) discrimination when, Complainant alleges, a major portion of her duties were removed on August 29, 2007, and given to a younger female; the alleged position change was not documented in a personnel action . . . [,] and the Administrator would not correct the situation or document the change in August 2008[;] [w]hether Complainant was discriminated against on the basis of retaliation when the Administrator allegedly subjected her to intimidation on August 7 and August 25, 2008, and made a disparaging statement regarding her work opportunities[; and] [w]hether the[se] allegations . . . constitute a hostile work environment."

Id. DOE dismissed Low's claim regarding the August 29, 2007 removal of her duties as untimely:

> Throughout correspondence with the Investigator and in the rebuttal statements provided,[7] Complainant refers to the alleged discriminatory events occurring as early as April 2007, and that the alleged removal was made permanent in August 2007. Accordingly, Complainant's delay until August 2008 to seek counseling renders this claim untimely.

Dkt. # 24-4, at 23 (citations omitted). Further, DOE found that Low had not made a prima facie case for discrimination on any of her other claims. Id. at 22-33.

Low subsequently filed two additional formal discrimination charges with DOE. On October 17, 2008, Low filed an EEO charge with DOE alleging that "since 1989 when coming to SWPA, [she has] been unable to apply for [her] supervisor's position." Case No. 4:09-CV-0505-CVE-PJC, Dkt. # 23, at 17. On January 24, 2009, Low filed an EEO charge with DOE alleging that "since inception in 1943, with concurrence from its Federal Department (now DOE), SWPA intentionally and systematically excludes *Females* from the GS-15 level and above." Id. at 31 (emphasis in original).

---

[7] Low's counsel provided to DOE rebuttal statements and his own analysis of testimony offered in connection with the investigation. Dkt. # 24-3, at 11-41.

5

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court draws "all justifiable inferences," id. at 254, and construes the record in the light most

favorable, Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998), to the party opposing summary judgment.

Exhaustion of administrative remedies is a "'jurisdictional prerequisite' to suit under Title VII," Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996), and under the ADEA, Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005) (deciding that "our holdings on the jurisdictional effect of Title VII filings determine the jurisdictional effect of ADEA filings" and, therefore, that "a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under the ADEA"). However, timely exhaustion of administrative remedies is not a jurisdictional prerequisite, because filing deadlines may be subject to equitable tolling in appropriate circumstances. See infra. Thus, a court may determine whether administrative remedies were exhausted on a Rule 12(b)(1) motion, but must convert the motion to a Rule 56 motion when considering the timeliness of exhaustion; this is what the Court has done in this matter.

### III.

Low lists five claims for relief in her amended complaint. The first is titled "*First* Retaliation Claim for Relief, Title VII, Retaliation, Immediate and Deceptive Non Implementation of Settlement Agreement Continuing Violation." Dkt. # 13, at 6. The Court previously dismissed this claim for lack of subject matter jurisdiction. Dkt. # 22.

Low's second claim is titled "*Second* Retaliation Claim for Relief, Title VII, Retaliation, Continued Deception and Denial by SWPA and their Refusal to Correct Continuing Violation."

7

Dkt. # 13, at 8. Under this heading, Low alleges two specific actions: first, the same creation of a position as alleged in her first claim;[8] and second, that

> DOE Civil Rights Unit retaliated against [her] by choosing to intentionally ignore the DOE's documented testimony and over fifty (50) pages of single-spaced analysis, data presentation, and rebuttal material provided by [her] attorney. The DOE Civil Rights Unit also sought out 'lesser' authorities and/or misconstrued facts to Plaintiff's detriment and found not a single prima *facie case* established for any claim . . . .

Id. (emphasis in original).[9]

Low's third claim is titled "*Third* Retaliation Claim for Relief, Title VII, Retaliation, Removal of Specific Duties as Agreed to in 2000 Settlement Agreement Continuing Violation." Id. at 10. She alleges that "an adverse employment action occurred when Defendant unilaterally removed the environmental duties given to [Low] as part of her settlement agreement in 2000." Id.

---

[8] This portion of the second claim was also dismissed for lack of subject matter jurisdiction. Dkt. # 22.

[9] Low also makes general allegations of "adverse employment actions" and "adverse treatments" under this heading. She alleges she "has had a series of adverse employment actions taken against her and then a refusal to document, then an incorrect documentation, and then additional refusal to document which were a 'cover' for discrimination," and "multiple and continuing adverse treatments directed specifically to [Low] for lodging a complaint of federally-protected rights . . . ." Id. Although Low now identifies some of these actions as the alleged refusal to document the change in her duties and the allegedly incorrect SF-50, they were not described in any detail in the amended complaint. Compare Dkt. # 28, at 1 with Dkt. # 13, at 8. The Court will not permit Low to amend the vague allegations in her amended complaint by providing specifics in a response to a motion for summary judgment. See Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003) (treating the inclusion of new allegations in a response to a motion for summary judgment as a potential request to amend the complaint). Further, the actions surrounding the documentation, or lack thereof, of her change in duties form part of the basis of Low's hostile work environment claim. Thus, she will have an opportunity to litigate a claim associated with those incidents.

8

Low's fourth claim is titled "*Fourth* Claim for Relief, Title VII, Hostile Work Environment, Continuing Violation." Id. at 11. Under this heading she alleges that, "[s]ince April, 2007, Defendant has openly exhibited hostility toward [Low] in testimony under oath by the actors themselves or others describing behavior, documents of record, and actions documented by records or lack of records." Id. She also alleges that "[d]efendant's behavior while retaliating against [her] created a hostile work environment," she was "often unable to physically remove herself away from her supervisor," "actions by Defendant unreasonably interfered with [Low's] work performance which [sic] continue today and were objectively intimidating, hostile, offensive, and debilitating," and that she "has been belittled." Id. at 11-12.

Low's fifth claim is titled "*Fifth* Claim for Relief, Age Discrimination in Employment Act (ADEA)." Id. at 12. She alleges that "in permanently losing her environmental duties, [she] was either 'discharged,' 'duties removed,' or received an 'adverse employment action.'" Id. She alleges that she was replaced by a younger employee who "was treated more favorably . . . ." Id. at 13.

Defendant asks the Court to dismiss Low's second, third, and fifth claims for failure to timely contact an EEO counselor. The Court previously granted defendant's request to dismiss Low's first claim based on lack of subject matter jurisdiction. Dkt. # 22.

Exhaustion of administrative remedies is a prerequisite to suit under Title VII and the ADEA. See supra. Federal employees who wish to bring sex or age discrimination claims "must consult [an Equal Employment Office (EEO)] Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). A claimant "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action." Id. After attempting to resolve the claim

9

informally, a claimant must file a formal charge with the agency's EEO office before filing a civil action.[10] 29 C.F.R. § 1614.106; see 42 U.S.C. § 2000e-16(c) (stating that a federal employee may file a civil action as provided in § 2000e-5 if aggrieved by the agency's disposition of her complaint); see also Shikles, 426 F.3d at 1308-09.[11] These exhaustion requirements serve the policies of "'protecting administrative agency authority and promoting judicial efficiency,'" Monreal v. Potter, 367 F.3d 1224, 1233 (10th Cir. 2004) (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)), by allowing the agency a change to resolve matters internally.

The Tenth Circuit distinguishes between the failure to contact an EEO counselor, which is a jurisdictional bar, and the failure to timely contact an EEO counselor, which is not a jurisdictional bar. Sizova v. Nat'l Institute of Standards & Tech., 282 F.3d 1320, 1325 (10th Cir. 2002). "Compliance with the forty-five day time limit is not a matter of jurisdiction, but rather may be tolled in the appropriate circumstances." Id. However, unexcused failure to contact an EEO counselor within 45 days precludes suit in federal court. The Court will examine each of Low's remaining claims that defendant seeks to dismiss to determine if it was timely exhausted.

---

[10] In a previous Opinion and Order, the Court erroneously referred to this formal charge as an Equal Employment Opportunity Commission (EEOC) charge. Dkt. # 22, at 7. A federal employee's formal charge is filed with the employing agency's EEO office, rather than with the EEOC. The Court's mistake as to terminology does not affect its reasoning in this case. The Court's previous Opinion and Order dismissed one of Low's claims because it was not included in her formal EEO charge. Id. at 10-12.

[11] As an alternative to the complaint procedure under 29 C.F.R. § 1614.105, a plaintiff may file an ADEA claim "against the head of an alleged discriminating agency after giving the [EEOC] not less than 30 days' notice of the intent to file such an action." 29 C.F.R. § 1614.201(a). Low has not provided evidence of compliance with this procedure.

10

1.  Retaliation by DOE Civil Rights Unit

    Low alleges that:

    DOE Civil Rights Unit retaliated against [Low] by choosing to intentionally ignore the DOE's documented testimony and over fifty (50) pages of single-spaced analysis, data presentation, and rebuttal material provided by [Low's] attorney. The DOE Civil Rights Unit also sought out 'lesser' authorities and/or misconstrued facts to Plaintiff's detriment and found not a single prima *facie case* established for any claim . . . .

Dkt. # 13, at 8 (emphasis in original). Low did not bring this claim to an EEO counselor or raise it in a formal EEO charge. See part II, supra.

"Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" for which a plaintiff must exhaust administrative remedies. Morgan, 536 U.S. at 114 (emphasis added). In the Tenth Circuit, "this rule is . . . applicable . . . to discrete claims based on incidents occurring after the filing of plaintiff's EEO complaint." Martinez, 347 F.3d at 1210-11 (emphasis added). Thus, the alleged retaliation by DOE was a discrete act for which Low must have exhausted administrative remedies. See Alcivar v. Wynne, 268 Fed. App'x 749, 755 (10th Cir. 2008)[12] (dismissing a Title VII retaliation claim for failure to exhaust administrative remedies when it was not brought in plaintiff's EEO charges); see also Jones v. U.P.S., Inc., 502 F.3d 1176, 1186 (10th Cir. 2007) (looking to plaintiff's EEOC charge to determine if he exhausted his ADA retaliation claim). Because Low did not bring

---

[12]   Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

it to an EEO counselor or in a formal EEO charge, the Court lacks jurisdiction over this retaliation claim.[13]

2.   Removal of Environmental Duties

Low alleges that "an adverse employment action occurred when Defendant unilaterally removed the environmental duties given to [Low] as part of her settlement agreement in 2000." Dkt. # 13, at 10.  In the amended complaint, she repeatedly alleges that this occurred in August 2007.  For example:

- "In August, 2007, SWPA unilaterally removed the Environmental Duties and gave them to a then 32-year old female . . . ." Id. at 2.

- "After being informed on August 29, 2007 that Plaintiff would only lose the environmental duties for six months, Plaintiff's supervisor, 67 minutes later, told Plaintiff that the loss of duties would be permanent . . . ." Id. at 3.

- "In the twenty-six months after Plaintiff's documented, unilateral permanent loss of duties in August 2007, Defendant has on at least four occasions put forward a post August, 2007 event which articulated or rationalized 'in reverse' a new reason for Plaintiff's loss of duties . . . ." Id. at 5 (emphasis in original).

The EEO counselor's report states, "DL believes that she has been discriminated against due to her age.  On August 29, 2007, a major portion of her duties (environmental program) were permanently removed and given to a person who was under the age of forty.  To date, those duties have not been given back to DL (continuing the violation)."  Dkt. # 24-3.  Low's formal EEO charge stated, "[c]ontinuing violation, age, to date since 8/29/07 in which Dallas Cooper removed a major portion

---

[13]   Although defendant argued that Low failed to timely exhaust her administrative remedies on this claim, Dkt. # 14, at 8, the Court must sua sponte dismiss claims over which it lacks jurisdiction.  Fed. R. Civ. P. 12(h)(3).  Low's failure to bring the retaliation claim in an EEO charge deprives this Court of jurisdiction over that claim.

12

of my job and gave to a significantly younger female." Dkt. # 24-4, at 5. The EEO investigator dismissed Low's claim regarding the August 2007 removal of duties as untimely. Id. at 23.

Defendant argues that Low's claims arising out of the removal of her duties[14] are untimely because she did not contact an EEO counselor within 45 days of any day in August 2007. Low makes two arguments in response: first, she argues that the 45-day time period started running from the effective date of the SF-50, rather than the date her duties were removed; second, she argues that the 45-day period should be equitably tolled.

The applicable regulation states that a claimant "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a). Low argues that this regulation gives her a choice of when to initiate contact with an EEO counselor: within 45 days of the allegedly discriminatory action, or within 45 days of the effective date of the associated "personnel action," whichever is later. Dkt. # 30, at 6 ("Low was permitted by regulation (the force of law) to make a choice--she permissively and legally opted to file upon receiving a ***personnel action***, when she determined that no one would otherwise come to her aid") (emphasis in original).

---

[14] Low brought a Title VII retaliation claim and an ADEA claim regarding the removal of the environmental duties. Because Low did not avail herself of the alternative ADEA filing procedure, 29 C.F.R. § 1614.201(a), the exhaustion requirements for Low's Title VII and ADEA claims are the same. See 29 C.F.R. § 1614.105(a) (requiring that aggrieved persons who believe they have been discriminated on the basis of "race, color, religion, sex, national origin, age, disability, or genetic information" must consult an EEO counselor within 45 days).

Low argues that the term "personnel action," as used in the regulation, is a term of art.[15] She argues that there was no "personnel action" until the removal of her environmental duties was documented in a form SF-50. Therefore, she argues, no "personnel action" occurred until the effective date of the SF-50, which was August 2008. Id. at 29-30.

This argument fails. A "personnel action" is the change in duties or other action affecting a claimant's position; an SF-50 is the form used to document some personnel actions. Thus, a "personnel action" took place on the date that Low alleges her environmental duties were permanently removed, regardless of the date on which SWPA documented the change in a SF-50.[16] The 45-day period began to run on the date low was notified of the change in her duties, not the date on which the change was officially documented. Cf. Gray v. Phillips Petroleum Co., 858 F.2d 610, 614 (10th Cir. 1988) (noting that the "Supreme Court has directed that the period for filing a

---

[15] Low does not actually offer a definition of "personnel action," although she did provide the Court with definitions of the terms "material fact," "term of art," "genuine," and "or." Dkt. # 30, at 3-4. She simply states, "please see the first two documents in the attachment - a portion of the U.S. Department of Transportation's Personnel Management Manual . . . and 'Office of (federal) Personnel Management's (OPM) 'The Guide to Processing Personnel Actions, Chapter 1.' [sic]." Dkt. # 30, at 5. The first attached document states that "[p]ersonnel actions include reclassification and abolishment of a position; promotion, reassignment, change to lower grade, or other position change of an employee; name change; quality step increase; performance and incentive awards; denial of within-grade increase; appointment or reinstatement of a person to a position; recording and termination of a detail in excess of thirty days; recording and termination of leave without pay in excess of thirty hours, furlough, or suspension; return to duty; resignation, termination, retirement, or other separation of an employee; death; corrections; and other actions." Dkt. # 30-2, at 2. The second document does not provide a definition of "personnel action;" rather, it outlines procedures by which certain personnel actions are documented.

[16] Further, if the Court were to accept Low's argument that no "personnel action" occurred on August 29, 2007, this would not change the fact that something allegedly discriminatory happened on that date. If what happened in 2007 was not a "personnel action," then it was a "matter alleged to be discriminatory," which would have started the 45-day clock running on claims relating to that matter.

14

discrimination charge begins on the date the employee is notified of an adverse employment decision" and that "[G]enerally, an employee is notified of an adverse employment decision when a particular event or decision is announced by the employer") (citing Del. State College v. Ricks, 449 U.S. 250 (1980)); Conkle v. Potter, 46 Fed. App'x 950, 952 (10th Cir. 2002)[17] (holding that the time period for filing a grievance began on the date plaintiff had notice she would be terminated, not the date of the later, formal, separation); cf. also Austin v. Potter, No. 09-60239, 2010 WL 10946, at *3 (5th Cir. January 4, 2010) (determining that the 45-day period began to run when plaintiff received notice she would be terminated, not when she received an official "Notice of Personnel Action" six months later).

Further, Low's conduct during and after August 2007 belies any argument that she did not think the change in her duties would be "effective" until some form was completed. The undisputed facts show that on August 28, 2007 and again on August 29, 2007, Low requested documentation of the change in her duties. Dkt. # 24-4, at 42. Further, in an e-mail to Worthington expressing dissatisfaction with the second draft SF-50, Low stated that the SF-50 "does not solve the problem-- it only documents the unilateral action taken against me." Id. at 4. Thus, Low was aware that the act of removing her duties and the documentation of that act were separate things. Throughout this entire dispute, Low has consistently alleged that the environmental duties were permanently removed on August 29, 2007. See supra. Low failed to contact an EEO counselor within 45 days

---

[17] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

15

of this date. The DOE investigator dismissed Low's claim as untimely on this basis. Low's claim is untimely unless equitable tolling applies.[18]

Despite Low's contention that "there is no reason for the need to consider any equitable reasons for Low's intentional delay in contacting an EEO Counselor," Dkt. # 30, at 7, she has made various statements that amount to an argument for equitable tolling of the 45-day period. Equitable exceptions to Title VII's time limits are to be applied sparingly. Morgan, 536 U.S. at 113; see also Biester v. Midwest Health Svcs., Inc., 77 F.3d 1264, 1267 (10th Cir. 1996) ("[c]ourts have narrowly construed equitable exceptions to the time limitations set out in Title VII"). The Tenth Circuit has recognized equitable tolling of these time limits:

> only if the circumstances of the case rise to the level of active deception which might invoke the powers of equity to toll the limitations period. For instance, equitable tolling may be appropriate where a plaintiff has been lulled into inaction by her past employer, state or federal agencies, or the courts. Likewise, if a plaintiff is actively misled, or has in some extraordinary way been prevented from asserting his or her rights, we will permit tolling of the limitations period.

Biester, 77 F.3d at 1267-68 (internal quotations and citations omitted). Even if active deception by the employer is alleged, "[t]he limitations period will not be tolled unless an employee's failure to timely file results from either a 'deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." Hulsey v. Kmart, Inc., 43 F.3d 555, 557 (10th Cir. 1994) (quoting Olson v. Mobil Oil Corp., 904 F.2d 198 (4th Cir. 1990)).

---

[18] The agency dismissed Low's claim as untimely and, thus, chose not to extend the 45-day time limit pursuant 29 C.F.R. § 1614.105(a)(2). Any extension under the regulations is to be granted by the agency, not by a court. See Smith, 180 Fed. App'x, at 20. Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

16

Low has never argued that she was unaware of the 45-day limitations period. In fact, she emphasized that she "was very aware of the 45-day requirement . . . ." Dkt. # 30, at 6. She argues that "in 2007 . . . [she] was being promised replacement duties by her supervisor, which would bolster her position and title." Id. This alleged promise apparently caused her to delay filing a discrimination charge.[19] Curiously, she also argues that the 45-day period should be tolled because the environmental duties were not, in fact, removed in August 2007. She argues that, during the period from June 2007 to August 2008, "she still was functioning and/or asked to shoulder considerable portions of the environmental workload, up and down like the movement of the tide, yet [she] had received an e-mail from her supervisor stating a permanent loss." Dkt. # 15, at 11. The Court is at a loss regarding what to do with this statement, as it contradicts the allegations in Low's amended complaint that the duties were permanently removed on August 29, 2007.[20] However, even if Low had been performing environmental duties after August 29, 2007, or if she had been promised other duties, this would not change the fact that on August 29, 2007, Low was aware that the duties would be removed. On this date, she was aware of the personnel action she

---

[19] It is unclear how the subsequent addition of non-environmental duties would affect whether or not Low was subjected to a discriminatory adverse employment action when, "[i]n August, 2007, SWPA unilaterally removed the Environmental Duties an gave them to a then 32-year old female contractor . . . ." Dkt. # 13, at 2.

[20] Low cannot create a genuine issue of material fact sufficient to defeat summary judgment by contradicting the allegations in her complaint. If Low wanted to bring a claim other than that she was discriminated against when her environmental duties were removed on August 29, 2007, she should have done so.

alleges was discriminatory, and the 45-day period began to run. Low has provided no evidence that SWPA attempted to prevent her from filing an EEO charge relating to this incident.[21]

Essentially, Low argues that she did not know that the removal was discriminatory until a later date. She argues that, although she had "full knowledge of the 45-day reporting requirement to lodge a 'discreet event,' [she] purposefully did not contact an EEO Counselor until [she] was certain she had been discriminated against--she planned no waiver of her well-known rights and well-known time tables. What [she] did do is wait until she was certain she had been subjected to a discrete act of discrimination." Dkt. # 15, at 12. It is well-established that "notice or knowledge of discriminatory motivation is not a prerequisite for a cause of action," and that "it is knowledge of the adverse employment decision itself that triggers the running of the statute of limitations." Hulsey, 43 F.3d at 558-59; see also Smith v. Equal Employment Opportunity Comm'n, 180 Fed. App'x 14, 20 (10th Cir. 2006)[22] (affirming district court's determination that the "45-day period begins to run when the plaintiff learns of the adverse employment action and so is on notice to inquire whether the motive was discriminatory").

Low failed to contact an EEO counselor within 45 days of the "unilateral permanent loss of duties in August, 2007 . . . ." Dkt. # 13, at 5. Low has failed to show that she is entitled to equitable tolling of this time period. In fact, she has shown that she was well aware of this limitations period

---

[21] Low has provided evidence of SWPA's delay in documenting the position change. However, Low was well aware of this delay, as she had requested documentation on August 28, 2007. Dkt. # 24-4, at 42. Low has provided no reason to excuse her failure to file a charge between August 28, 2007 and July 15, 2008, when Cooper apologized for the delay in completing the paperwork. Thus, any delay by SWPA does not support equitable tolling in this case.

[22] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

but, nevertheless, chose to delay bringing her grievance to an EEO counselor.  For these reasons, Low's Title VII claim that "an adverse employment action occurred when Defendant unilaterally removed the environmental duties given to plaintiff as part of her settlement agreement in 2000," Dkt. # 13, at 10, and her ADEA claim that "[i]n permanently losing her environmental duties, Plaintiff was either 'discharged,' 'duties removed,' or received an 'adverse employment action'" and "was replaced by a significantly younger worker, not age protected," id. at 13, must be dismissed as untimely.

**IT IS THEREFORE ORDERED** that the portion of Defendant's Motion to Dismiss Revised Complaint in Part for Lack of Jurisdiction (Dkt. # 14) that was taken under advisement and converted to a motion summary judgment is **granted**.  The Court previously granted a portion of defendant's motion to dismiss.  Dkt. # 22. Therefore, Defendant's Motion to Dismiss Revised Complaint in Part for Lack of Jurisdiction (Dkt. # 14) has now been granted in its entirety.

**IT IS FURTHER ORDERED** that plaintiff's second, third, and fifth claims are **dismissed**. The Court previously dismissed plaintiff's first claim.  Dkt. # 22.  Therefore, the **sole remaining claim** in this case is plaintiff's claim titled: "*Fourth* Claim for Relief, Title VII, Hostile Work Environment, Continuing Violation."

**IT IS FURTHER ORDERED** that the parties are directed to **show cause** why this case should not be consolidated with Case No. 4:09-CV-0505-CVE-PJC.[23] Responses shall be filed no later than **February 12, 2010**, shall be titled "Response to Order to Show Cause", and shall not exceed four pages.

**DATED** this 8th day of February, 2010.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[23] The only remaining claim in this case is plaintiff's claim titled: "*Fourth* Claim for Relief, Title VII, Hostile Work Environment, Continuing Violation." The only remaining claim in Case No. 4:09-CV-0505-CVE-PJC is Low's claim that she was unable to apply for her supervisor's position in 2008.